It is true, Your Honor, that this is a tax case. However, really, this case comes before you as a procedural matter before the court. This case was on summary judgment, and the issue here was whether the government of the United States has proven each essential element to prevail for summary judgment in our eyes. It is our position that the government has not made a verdict. Under 6212 of the Internal Revenue Code, that's 26 U.S.C. 6212, the government must prove that it issued a notice of deficiency for each year issued which the government has not proven in this case. In fact, for later years, 2005 to 2009, there is no evidence of a notice of deficiency at all in the record. My client, excuse me, the magistrate, in his recommendation to the district court, cites merely to the testimony as evidence to sustain or to meet his verdict. Your Honor, that's not sufficient. The government has not made a verdict. And therefore, the verdict did not shift to my client. No, the government must, under the Federal Rules of Procedure, must establish each necessary element to prevail. Your Honor, it's important to look to its decision in Cato v. United States, 853, Fed 2nd, 1209, that's a 1988 decision, as well as United States v. McCallum, that's 970, Fed 2nd, 66. Your Honor, McCallum is squarely on point. In that case, the government similarly was attempting to convert a judgment, an assessment, to a judgment. Taxpayer, Mr. McCallum, is a pro se taxpayer. The government, again, filed a summary judgment, and the district court granted a summary judgment. On appeal, this court, the circuit, found that the record was lacking. It reversed and remanded the case, specifically on 6212, in the chart way I'm going to show you. The district court erroneously cites and relies on this court's decision in Perez, that's United States v. Perez, 312, Fed 3rd, 191, and that's a 2002 decision. That's page 6 of the district court. The district court specifically overrules my client, a pro se taxpayer, Mr. DeBelka's objection that the government has not established its legal burden under 6212. The district court relies on the dicta, Your Honors, of Perez. Perez is distinguishable. In the brief, the government, again, cites to the forms of 4340, and is relying that it has met, under Perez, the prima facie burden. The burden is therefore shifted to my client. Perez is distinguishable, and the reason is, in that case, this court specifically states, IRS did not need to issue a deficiency notice, because Perez's tax debts were not a deficiency. This is why the 4340 allows for assessments. In other words, Your Honors, let me lay it a self-assessment case. Mr. Perez filed his own tax returns. The government never made a deficiency. It never altered it. It never adjusted the tax returns. That's not what happened in this case, hence why Perez is distinguishable, hence why the district court was in error in relying on Perez. The procedural safeguards, Your Honors, respectfully, they apply to my client. That's why Cato and the McAllen decisions are on point. The Perez court also went on to state, the IRS is not seeking to collect and assess any amount that is greater than what Mr. Perez has already listed on his tax return. It's a fine distinction, but it's a very important one. It's a two-step process. First, there must be an assessment. That's step one. That's the form to prevail in summary judgment. The government must also come forward and say that notice of deficiencies were sent. It did not do that. That's why it has not met the legal burden to prevail for summary judgment. So just so I understand, in Perez, when we said a Form 4340, quote, constitutes valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof. Are you saying that that's dicta? That wasn't really necessary to decide Perez? Exactly, Your Honor. That's not the only other case. When you go on to Section D, there was no deficiency notices. So that's why the case is distinguishable, Your Honor. That Perez, yes, it does state, and I can't answer why, that it complies with notices. But that's not the rule, and I think it's distinguishable. And again, the Powell case is really very informative, very helpful. We also cite the Welch decision, which is out of the federal circuit. We cite to that decision, obviously it's not controlling it, but it really lays out the government's burden in a very clear manner. And that case is 678 Fetford 1371. Quito, Your Honor, I think I mentioned that earlier. That's another case. The second issue, for purposes of this, if we were to assume that the burden has shifted and that the government has met its burden to prevail, respectfully, Your Honor, my client has with sufficient evidence to defeat some of the government. District Court weighed the evidence, which, as the Court knows, is improper under Rule 56 of the Federal Rules of Procedure. The District Court, you know, cites to several tax court decisions, district court decisions, and appellate decisions. But in all those cases, Your Honor, you'll find that they were trials in where the trial fact weighed the evidence, and hence issued a ruling. The District Court, in its decision, in its written decision, cites two Fifth Circuit cases, BMG Musick v. Martinez, that's 74, Fetford 87, that's a 96 case, and U.S. v. Lawrence, 276, Fetford 193, from 2001. In Lawrence, the defendant argued his affidavits, self-serving affidavits, raised a genuine issue of fact. The only evidence in the record, Your Honor, was his affidavit. He simply states, I have paid that. The government was collecting on student loan. There was no evidence of payment, nothing in the record other than his affidavit. Judge Smith, Your Honor, writing for the Court, stated that that was insufficient evidence to survive or conclude self-serving judgment. There was, again, no evidence of any other evidence other than his affidavit. The BMG case is much the same. It's a single self-serving affidavit. The point being, this case is much different, Your Honor. Mike Conant has presented substantial evidence to refute or to defeat self-serving judgment. This Court should look to the McClendon decision, which just came out during the briefing of this case, that's 892, 5th 3rd, 775, 2018. In McClendon, this Court held that deposition testimony and affidavits by the taxpayer were sufficient to defeat self-serving judgment by the government. And this Court reversed and re-enacted the decision. We also cite to the 11th serving case, which, again, this Court in and for 2018. That was an involvement decision by the 11th serving, overruling its earlier decision of Mayo. Mayo was a case cited by the magistrate in his recommendations to the District Court, and in that, the magistrate was citing that self-serving affidavits alone are not sufficient to sustain or to survive self-serving judgment. There's no specific rule in this circuit, Your Honors, on whether an affidavit alone is sufficient to survive self-serving judgment. Respectfully, I would suggest it's applied case by case, and it's the totality of the evidence. The cases of BMG Music and the U.S. V. Warrens that I discussed are distinguishable for the very simple reason that was the only piece of evidence to survive self-serving judgment. In this case, however, we have deposition testimony. We have third-party bank affidavits from the custodian of the banks. We have bank statements themselves. This is all third-party evidence that, essentially, the District Court or the magistrate, Your Honors, weighed the evidence and found that the government's evidence was superior to my client's proper self-serving judgment to do so. Your Honors, I'd like to touch on, just to have a few minutes, the community property issue. This jumped out at me when I was assigned or pertaining to this case. Louisiana is just like Texas. It's a community property state. I'll give you an easy example. I am self-employed. My wife is a W-2 worker. If we choose to file marriage, file it separately, I don't just report my earnings and my spouse doesn't just report her W-2. That's not how it works. You have to combine the income of the community and divide down the middle. So let's say I make twice as much as my spouse, I have to report half my earnings and half hers. This is pertinent to the earlier years, is that correct? The 19- Absolutely. 2003. So in those years, the issue is different with regard to the notice of deficiency, though, isn't it? That argument is for the 2005 to 2009. Yes, that would come not just to whether the government has burned, but to whether there's sufficient evidence to preclude someone's judgment. But you're asking, like, the taxpayer, my client was a mayor, and it's undisputed from 1997 through 2001. Is the government's assessment presumptively correct as to the earlier years, if there's no notice of deficiency issue? If there's no notice of deficiency? No, Your Honor, but there was a notice of deficiency for the earlier years. Yeah, that's what I mean. So the government's assessment would then be presumptively correct at that point, unlike the later years where you're arguing that the notice of deficiency, the lack of a notice of deficiency, would be fatal to those claims. Also, I understand that you did not, or a plaintiff in this case, I should say, did not object to the magistrate judge's recommendation, or I should say a summary judgment, in favor of the ex-wife, Rebecca Thorpe. Is that not correct? Meaning my client or the government? No, your client. He objected to the motion, my understanding, no, he did, Your Honor, my understanding is that there was a report by the magistrate. But you're saying in response to the magistrate report? Yes. I'm not certain, to be honest. I'll try to answer that question on the law. I said plaintiff, and I meant defendant, your client. My client, I don't know the answer, Your Honor, to be honest. But in any event, he raised it, and it was objection B, that the district court overruled. And I think I have that on page 14 of the recommendation. The magistrate fails to address the issue. He says it's irrelevant. This is a yes, sir. So while specifically my client, to answer the gentleman's question the best I can, he did not also object to the magistrate's earlier finding releasing Mrs. Cabello or Mrs. Thorpe from the case. He objected to the granting of summary judgment against him for the issue of the income itself. Credit of the amount. Credit. Basically, my example is divided. Um, the government's argument is simply lacking in this court, Your Honor. They cite to you Internal Revenue Code 66, which is an exception to the general rule. That's where you limit the separate part. The theory is Congress says if your spouse is estranged, you don't live together, and you're in the process of divorce, yes, you do not have to report the entire community income because you're not benefiting. There's nothing in the record to state otherwise that Mr. and Mrs. Thorpe, for the years, the early years, they did, they resided together in Texas. Northern Texas, that's where this case was arised. The government sent the notices to Texas. They sued my client in Texas. There's nothing in the record otherwise to say that they were not enjoying community in Texas. The point is there's a minimum issue of fact that this was retired to be ruled by the parties, particularly by the court itself and its ruling. In closing, Your Honors, we believe the government is not entitled to self-judgment in this case. First and foremost, it has not met its burden in establishing and requisite notice for the latter years. And secondly, even if the government has met its burden, we believe my client, um, Mr. Kovelka, has presented sufficient evidence to defeat some of the judgments. It wasn't just the self-serving affidavits. That's the key point here. There was depositions. There were affidavits by third parties. I can't explain the affidavit representing a direct official. Why would you judge cites, or maybe it was the magistrate, cites them as letters. They are affidavits, um, by, uh, by the bank. And there's testimony. So it's an issue of fact. So therefore, Your Honor, I'm afraid, respectfully, that this court reverses some of the judgment and remain in this case for further proceedings. Thank you, Mr. Weiler. Are you safe now? Janet Bradley with the Justice Department. May it please the court. Um, why don't I just start first with the appellant's reply brief that cites this first decision to McClendon. There's nothing at all inconsistent with McClendon and the government's position. The McClendon court cited to the Stein and Locke panel, but as counsel for the appellant failed to note in their reply brief, there was actually a Stein three. In Stein two, the unbothered panel had remanded the matter back to the original panel assigned to the case. The unbothered panel said that there was nothing that a self-serving, self-serving, uncorroborated affidavit couldn't preclude summary judgment. By the same token, it noted that that doesn't necessarily preclude, um, defeat summary judgment. Um, the original panel, when they got the case back in Stein, decided to, it could have reversed, um, and directed summary judgment before the appellant, but didn't do so. And subsequent to the appellant's brief, the case was remanded to the district court. And interestingly enough, the case went up, came back down, and the district court ultimately decided that in, in the Stein case, that the affidavit was just uncorroborated. There was nothing there, um, and the district court judge was very, um, eloquent in stating to the extent that the government's assessment was entitled to a presumption of correctness, that if a self-serving, uncorroborated affidavit would be able to defeat that, that basically opening up Pandora's box, and the district court, um, refused to do so. That case has been again appealed to the Eleventh Circuit. The appellant has filed a brief, and the government's brief isn't due until March. But in any event, in the McClendon decision, in that case, there was more than just the taxpayer's affidavit. There additionally were checks provided to support, um, the taxpayer's position, and there were also business records. Here on the other hand, um, there's nothing that wasn't conclusory. His affidavit is stating that he didn't have any money, he didn't have any accounts. While typically an affidavit's going to be self-serving, admittedly, there was just no independent, independent corroboration. He had ample time from the time this case was first audited to amass some records, and again here, as he points out how Perez is a little distinguishable, I think the facts here are just significantly worse for Mr. Cabelka. Mr. Cabelka hasn't filed federal income tax returns. When he was audited, Mr. Cabelka refused to cooperate with revenue agent Yates. He refused to come forward with any books or records to say, well, you know, hey, okay, this account may not have been mine, but here, here are my accounts where my income went. He could have worked with the revenue agent. He didn't. He's so involved, um, and it took the government, um, years later to actually file an institute to reduce those assessments. The, I don't mean to interrupt your train of thought, but on the notice of deficiency issue, um, just so I understand, with respect to that issue, are we talking only about the years 2005 to 2009? Is there something different about the notice of deficiency that was, that was sent or not sent for those years? Is that right? With respect to the years preceding 2005, in the record attached to the government summary judgment proceedings, we did have actual copies, and I believe there were three deficiency notices, one for like 97 to 99, then in 2002, and then in 2003, 2005. There's nothing in the record why we would have them. I honestly can't, if you don't know, but it's been the government's position here and consistently that for the 40s, distributed assessments of payment, that those are presumptive proof of a valid assessment. This court has so held and numerous other courts and appeals have agreed. And what's your best case for that proposition from our court? From your court, I, I like Brezicism, Brez, McCallum, um, I think those two, and I know in our brief, we actually cite several decisions from those court, I think there was a pleaded off the top of my head. No, that's okay. So the idea is that the form alone, the 40 through 40, which on it has notations with the dates, either stating statutory notice of deficiency or assessment for default of 90 day letter, which the Sixth Circuit in Rohnert held was sufficient evidence. Again, the government comes with presumption of official regularity and the IRS, when there's a deficiency, we're in the business. We send notices of deficiency. It's, it's what we do. Like Amazon sends packages, we send notices of deficiency. And here again, um, Alfred didn't come forward with any evidence that, you know, the IRS building had burned down or that there was something surreptitious or out of the normal. Um, we would have, have sent these to him. And again, he's not disputing that. I don't think he can dispute that it wasn't his last known address where we're required to send it because the IRS is entitled to rely on the addresses that the taxpayer provides on their latest return. And here we were, when he admittedly hadn't filed a return since it was 1990s, you know, we sent it to the addresses, the drug do agent sent it to three addresses where we believe he could be found. Um, so, uh, you know, unlike the Perez case facts here are just so much worse for the Belka here. And, uh, again, so in addition to the presumption of correctness and the presumption of official regularity that we would have done what we were legally required to do. So we did, um, to the extent that, um, Mr. Belka's alleging that we didn't meet our burden of proof, the government and the magistrate in the distance disagree with that. Here again, to prove our assessments, we had the 4340s, we had the spreadsheet and the testimony of the revenue agent Gates, um, who was involved in auditing Mr. Belka's returns. And we also have the declaration of the revenue officer Dodge, who kind of summarized some of what was going on, that Belka hadn't filed returns, that he had received income. And on the income matter, it's, he doesn't, Mr. Belka's not disputing that he didn't receive income from his gambling or his farming or his harvesting or his selling of farm equipment or receipt of insurance proceeds or USDA. He's, he's just kind of claiming, well, they aren't my accounts. But again, the testimony and the depositions that he refers to, to bank officials, you know, we're going back, we're in like 2016 and we're going back to see 1997. There were questions about bank retention policies. The two bank representatives said they weren't able to pull up bank statements or other account information. So that, that alone, the matter that found wasn't sufficient, um, to meet his burden to come forward with competent and relevant evidence to dispute our assessment. I know it's not an issue, but what happened in 2004? You know, and that's kind of a curious thing here because, you know, now keep in mind, we were able to, the IRS was able to find bank accounts from 97 up until 2003. Then all of a sudden, no bank accounts. And for the subsequent years, 2005, we weren't able to find any bank accounts. So that's why we used informational returns, essentially Form 99. So again, he doesn't dispute that he received the incomes from those Forms 1099. I don't know. There's like a little timing issue from the time I think he knew the IRS was starting its investigation. And it's, we don't know. I mean, there's nothing in the record for that year, but it's kind of... There was never an assessment for 2004. Nothing from 2004. We jumped over that year. And it's kind of consistent here with some of the testimony of the revenue officer, who so far has tried to hide assets, put things in his kids' names, his debt attorney's names. He was really, you know, putting his assets, um, other people, basically, so we, we couldn't, we couldn't follow the income. And I guess, you know, for those subsequent years, he did get income and, you know, queried, what did he do with it? If you're getting a check, you've got to go someplace and cash it. Is he just doing it on cash? But in any event, for the earlier years, we have all of the different bank accounts, the money that was flowing through them, sizable. I mean, in years, you know, there was anywhere from a million and a half. I think it was over three and a half. The deficiency here is 26 million dollars. He was a savvy businessman. He obviously was doing very well in his various enterprises. He was purchasing some expensive assets. Purchasing some very expensive assets, including some of the farming equipment, which is kind of, and antique automobiles, the Rolls Royce, the old Corvettes. So he, and he seemed to be living pretty lavishly. He had multiple homes. Um, so yeah, he was, he had to be buying this somehow. Why don't you move to the community property issue in Texas versus Oklahoma residents? Sure. Um, with respect to the community property issue, um, his argument is essentially for the wife and were still married up until 2001. So 97 to 2001, it should be community property. Um, the record, the record does reflect that the wife, Ms. Slate, I think she realized what her husband at the time was up to and had some questionable reporting issues. So in 1985, she started filing her own returns. And then the record also reflects that I believe it was 1990 that she actually had separated from Mr. Kabelka and was living separate and apart. Um, so, uh, as we cite in our brief with respect to section 66 of the code, it provides an exception. So assuming here that they were living in a community property estate, they here, they lived apart, they didn't file a joint return, and the income that was being received was attributed to Mr. Kabelka. So under those circumstances, it was his income, not her income. Was the section 66 argument that you're making here, was that raised below? No, unfortunately the argument wasn't presented. But on appeal, we can assert any grounds to affirm the district court's decision. And on this point, we think it's appropriate. But even to the extent here this morning that it's been referred to that they lived together, I think in their brief, they cite to on occasion. So, you know, he may have showed up just to see the kids, who knows why, but it appeared that, you know, they were living in Oklahoma, um, not Texas. And to the extent he refers to later events of the government filing suit in Texas, I mean, we filed suit in 2016. So where he was living in 2016 isn't relevant to going back to the time period when he was still married for the divorce in 2001. So the government's position here is that we came forward with more than sufficient evidence to demonstrate that the income for the years at issue belonged to Mr. Cabelka. The magistrate so found. The district court agreed with those conclusions and that Mr. Cabelka didn't come forward with competent, non-conclusory, substantive evidence to show that the presumptive correctness of the assessments were in any way an error. And we would ask this court to please affirm the district court's judgment. All right, thank you. Thank you very much. Wiley, you save time for both. Thank you, Your Honor. Again, Christian Wiley for Mr. Cabelka. The court has asked the question to the government, and I think, in essence, they're answering it in our favor. They're asking the court again to weigh the evidence. Were they in Texas? Did they reside together? The fact of the matter is the district court or, excuse me, the magistrate issued it or said it was not a material issue. It was not briefed. It was not issued. It's a material issue of fact. That's simply what my client is asking for, that he has his day in court. You hear from the government that he was wealthy. These are, again, all issues of fact in dispute. At the end of the day, $26 million, you have to earn, you know, almost $8 million a year to get to that number. It's staggering. My client was a rural that the government states. It's still an astronomical number. That's simply what my client is asking. These are disputed issues of fact. At the end of the day, the magistrate cites to a case that's been overruled. The Mayo decision was overruled. This is the first I heard that Stein, there's a Stein 3. I'm not aware of that, Your Honors, but at the end of the day, it was an en banc decision. It doesn't necessarily matter because there is no per se rule in the circuit, as I stated earlier. You heard from opposing counsel for the government. They are relying on Perez. The district court relies on dicta, Your Honors, of Perez. It's interesting, the magistrate, excuse me, the district judge cites to McCallum and Perez, but relies on Perez. McCallum is far more on point. That case, there was an audit and an assessment, just like this case. My client did not file the returns. You heard that from the government. The government must audit and the government must make an assessment. That's not a dispute, but there's a second part. It's a fine distinction that someone like me as a tax attorney appreciates, that you have to send the bill. You heard the example, the Amazon. If the shipment shows up, but there's no bill, you have to issue the bill. This court has repeatedly stated it's a two-part test. That's why we look to the Wells decision. It really lays it out well, but going back to Perez, footnote 14, footnote 18, this court cites to an earlier decision of McCarthy, but I don't think this court has ever said that the form 4340s alone are sufficient evidence to prevail under summary judgment for this two-part standard when there is a deficiency. That's not the holding in Perez, respectfully. In fact, there's another site here. It says, as a general rule, and I'm reading from Perez, the IRS may not assess or collect a taxpayer's deficiency unless it sends the requisite notices of deficiency. It's undisputed there's no deficiencies for the latter years. There's nothing in evidence. You heard about the hearsay testimony of a revenue officer. A revenue officer is not an agent. An agent is the one who makes the assessments, that does the auditing. An officer collects the debt. What the government is talking about is that someone went and looked in the records and claimed that everything was done, but that's not sufficient for summary judgment, your honors. My client should be entitled to his day in court, should be entitled to refute the testimony, to refute the evidence. We think he has absolutely done that. He's not relying on his self-serving affidavit. He's presented sufficient evidence, and with that, your honors, I'll close unless there's any other questions. Thank you. Thank you. Your case is under submission, and the court will take a brief recess before hearing.